UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ANTHONY YOUNG, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-2420 |
| | § | |
| DAVID GUTIERREZ, *et al*, | § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

This action, brought pursuant to 42 U.S.C. § 1983, dramatizes much of what is most troubling about the procedures by which we execute criminal defendants.

A Texas jury convicted Plaintiff Christopher Anthony Young of capital murder in 2006, and imposed a sentence of death. Plaintiff obtained no relief on direct appeal or through state and federal habeas proceedings. Execution is scheduled for July 17, 2018, and Plaintiff seeks a stay ("Motion"). (Doc. No. 2.) Other than this litigation, Plaintiff's last hope was a recommendation of clemency from the State's Board of Pardons and Paroles (the "Board"). Only if the Board makes a recommendation of clemency can the Governor commute Plaintiff's sentence.

Six of the seven members of the Board submitted ballots denying Plaintiff a favorable recommendation on July 13, two business days prior to the scheduled execution. The seventh member of the Board abstained. Counsel for the Board could not say whether the Board members met or otherwise communicated before casting their votes. Plaintiff brings suit against members of the Board in their official capacity because "[t]he process by which [the Board] failed to recommend to the Governor to commute Young's death sentence raises the strong presumption its decision was tainted by racial discrimination." (Doc. No. 2 at 2-3.)

Plaintiff bases his claim of race discrimination on the differential treatment accorded him, an African-American, and Thomas Whitaker, a Caucasian, whom the Board recommended for clemency earlier this year. That recommendation was approved by the Governor and Whitaker's death sentence was commuted to a sentence of life imprisonment. Without any reference to any official policy or procedure, Plaintiff contends that "there are three sets of considerations the Board examines when deciding whether to recommend clemency: the nature of the crime, the maturation of the inmate, and the wishes of surviving family members." (Doc. No. 1 at 2.) Plaintiff claims that, on these three criteria, his case and Whitaker's are comparable, and that the only material difference is race. The most telling similarity, according to Plaintiff, is that in both cases a family member of the murdered victim favored clemency. At the oral argument that was held on Plaintiff's motion to stay his execution, counsel for Plaintiff said that he was aware of six instances in this century in which family members of murdered victims in Texas asked that the murderer receive clemency. In the case of Whitaker, a white person, clemency was granted. In the other five cases, involving defendants who were African-American or Hispanic, clemency was denied.

Although this history of clemency granted and denied is, if true, deeply troubling, the Court is mindful that it is being asked to review an executive function rather than a judicial tribunal. The Supreme Court has recognized that "'[c]lemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted.'" *Harbison v. Bell*, 556 U.S. 180, 192 (2009) (quoting *Herrera v. Collins*, 506 U.S. 390, 411-12 (1993) (footnote omitted)). Under Texas procedure, an inmate facing execution may file a written application for a "reprieve from execution" or "commutation of death sentence to a sentence of life imprisonment . . . not later

than the twenty-first calendar day before the execution is scheduled." 37 TEX. ADMIN. CODE §§ 143.43(a), 143.57(b). The Board then makes a non-binding recommendation to the Governor. The Texas Constitution gives to the Governor the sole power of granting clemency, but he cannot act without a favorable recommendation from the Board. TEX. CONST., Art. IV, § 11.

Plaintiff followed the applicable procedure in every respect. He received notification on July 13, 2018, that the Board had denied his application for both delay and commutation. He filed this suit on the same day.

In a rational world, the Court would be able to authorize discovery and sift through the evidence obtained thereby. Unfortunately, however, that option is not contemplated by the standards for staying an execution. Rather, the Court is asked to make a determination on the critical issue of possible racial bias on the first business day after the Board has acted, and within 24 hours of the scheduled execution.

This foreshortened process is especially anomalous in the context of a sentence of death. Federal courts in Texas are accustomed to reviewing capital sentences via habeas corpus petitions. Invariably, the factual record is detailed and encyclopedic. The time frame for review is not at all truncated. The applicable principles of law are well-settled and familiar.

Here, by contrast, there is no factual record. The time frame is designed to render impossible intelligent and dispassionate judicial review. Applicable principles of law seem non-existent.

As exiguous as this procedural framework may seem, Defendants argue that it is even more so. Specifically, Defendants argue that Fifth Circuit law holds that habeas, not civil rights, law provides the proper vehicle for an inmate's challenge to executive clemency proceedings. In a related argument, Defendants assert that federal courts lack authority to stay an execution in a

§ 1983 case. Defendants base their arguments on a series of cases decided by the Fifth Circuit before 2010. *See Beets v. Tex. Bd. of Pardons & Paroles*, 205 F.3d 192, 193 (5th Cir. 2000); *Faulder v. Johnson*, 178 F.3d 741, 742 (5th Cir. 1999); *Moody v. Rodriguez*, 164 F.3d 893 (5th Cir. 1999). The Supreme Court, however, subsequently decided *Skinner v. Switzer*, 524 U.S. 521, 525 (2011), which potentially broadened § 1983's reach to include those cases which did not directly challenge an inmate's conviction, but still "impl[ied] the unlawfulness of the State's custody." Since *Skinner,* the Fifth Circuit has questioned its prior case law, has allowed challenges to clemency proceedings to proceed under § 1983 and has "exercised jurisdiction over appeals regarding stays of execution arising in § 1983 cases." *Tamayo v. Perry*, 553 F. App'x 395, 399-400 (5th Cir. 2014) (*citing Sepulvado v. Jindal*, 729 F.3d 413, 420-21 (5th Cir. 2013)). Because the Fifth Circuit has not yet reconciled its case law with *Skinner, see Tamayo,* 553 F. App'x at 400, the Court does not see a need to rule on Defendants' jurisdictional argument.

Defendants are on somewhat firmer footing in arguing that Plaintiff has not met the standard for obtaining a stay of execution. In deciding whether to issue a stay of execution, a court must consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injury the other party interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 425-26 (2009).

In the hearing held in this case, the parties agreed that this case turns on whether Plaintiff has made a strong showing that he is likely to succeed on the merits. Young faces imminent execution, the most irreparable form of injury this Court can conceive. But a petitioner is not entitled to a stay "[as] a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks omitted).

4

In attempting to make a "strong showing" that racial discrimination has occurred, Plaintiff is asked to do that which is well-nigh impossible. Those engaging in race discrimination seldom announce their motivations. And, circumstantial evidence is hard to come by even when copious discovery is permitted.

Plaintiff has not been afforded any discovery. Members of the Board have not offered any explanation for their decision. Their voting sheets attest: "I did not give prejudicial consideration to the race, color, sex, religion, national origin or political affiliation of the applicant or the victim." (Doc. No. 13, Exhibit 4). But they have not even offered any reason to believe that Plaintiff's request for clemency received any meaningful consideration, much less the painstaking consideration that should be an irreducible minimum when a life is in the balance.

Ideally, the State – independent of Plaintiff – would be determined to show that racial considerations had not infected the clemency proceeding. That is, the State would be committed to ensuring that the clemency process was not only fair but could be seen to be fair. To the contrary, however, the State is eager to proceed with Plaintiff's execution without either side having any opportunity to explore the racial dimensions of the denial of clemency.

The Supreme Court has rightly said that discrimination on the basis of race is "odious in all aspects, [but] is especially pernicious in the administration of justice." *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 868 (2017). It is no small tragedy that, in this case, neither Plaintiff nor Defendants will ever know what role, if any, racial bias has played.

Because Plaintiff has not met the stringent criteria for the issuance of a stay, his Motion must be **DENIED**. Because Plaintiff's lawsuit cannot proceed without a stay, it is **DISMISSED WITH PREJUDICE**. Plaintiff may file an appeal *in forma pauperis*.

5

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 17th of July, 2018.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE